**IN THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

**UNITED STATES FOR THE USE AND BENEFIT OF ALLAN MYERS VA, INC.,**
12500 Fair Lakes Circle, Suite 150
Fairfax, VA 22033

AND

**ALLAN MYERS VA, INC.,**
12500 Fair Lakes Circle, Suite 150
Fairfax, VA 22033

Plaintiffs,

v.

**OCEAN CONSTRUCTION SERVICES, INC.**
104 Aragona Boulevard, Suite 101
Virginia Beach, VA 23462

Serve: John Bradley Reaves
555 Belaire Avenue Ste. 300
Chesapeake, VA 23320 - 4686

AND

**WESTFIELD INSURANCE COMPANY,**
One Park Circle
Westfield Center, OH 44251

Serve: CT Corporation System
4701 Cox Road Ste. 285
Glen Allen, VA, 23060 - 6808

Defendants.

Case No. ____

**COMPLAINT**

United States for the use and benefit of Allan Myers VA, Inc., and Allan Myers VA, Inc., by counsel, state as follows for their Complaint against Ocean Construction Services, Inc. and Westfield Insurance Company.

## PARTIES

1. Allan Myers VA, Inc. ("Myers") is a construction company incorporated in the Commonwealth of Virginia, with offices in Fairfax, Virginia.

2. Upon information and belief, Ocean Construction Services, Inc. ("OCS") is a construction company incorporated in the Commonwealth of Virginia, with offices in Virginia Beach, Virginia.

3. Upon information and belief, Westfield Insurance Company ("Westfield") is a company incorporated in the State of Ohio, with offices in Westfield Center, Ohio. Westfield is a commercial surety company that issues surety bonds on construction projects.

## JURISDICTION AND VENUE

4. This action is brought pursuant to the federal Miller Act, codified in 40 U.S.C. §§ 3131, *et seq.* Pursuant to 40 U.S.C. § 3133(b)(3)(A), this action is brought in the name of the United States for the use of Allan Myers VA, Inc.

5. Pursuant to 28 U.S.C. § 1331, this court has subject matter jurisdiction over this civil action that arises under the laws of the United States. In addition, this court has pendent jurisdiction over the other claims brought herein.

6. Pursuant to 40 U.S.C. § 3133(b)(3)(B), this action is brought in the United States District Court for the district in which the contract was to be performed and executed. The claims stated in this complaint arose from the performance of a subcontract on a federal public

work constructed in Arlington, Virginia. As such, venue is proper in the Eastern District of Virginia, Alexandria Division.

## FACTUAL ALLEGATIONS

7. On or about June 5, 2020, OCS entered into a contract with the United States of America, through the Army Corps of Engineers ("USACE") for purposes of a construction project known as Arlington National Cemetery, McPherson Road Renovations, Arlington, Virginia (the "Project").

8. On or about June 9, 2020, OCS and Westfield issued a Miller Act Payment Bond and a Performance Bond, collectively, Bond No. 063959K, in connection with the Project. The Payment Bond is referred to hereafter as the "Payment Bond."

9. On or about August 13, 2020, OCS and Myers entered into a Subcontract Agreement (the "Subcontract") pursuant to which Myers agreed to perform the utility, earthwork, concrete, and asphalt work for the Project.

10. The Subcontract provided for an initial lump sum amount of $7,558,353 (the "Contract Sum"). During the Project, OCS and Myers entered into five (5) Change Orders that increased the Contract Sum to $7,901,235 (the "Adjusted Contract Sum").

11. During the Project, Myers submitted payment applications for work performed, but OCS has wrongfully failed to pay Myers in full in response to those payment applications.

12. In addition, during performance of work for the Project, Myers encountered various changes and conditions for which it was not responsible and that were beyond its control, and which caused Myers to incur additional costs and/or caused delays to the Project completion date. Such changes and conditions also caused Myers to perform its work less efficiently than

reasonably anticipated, thereby suffering a significant loss of productivity. Myers has not been compensated for its additional costs or related impacts, including productivity losses.

13. OCS mismanaged the Project and failed to properly administer the Subcontract in numerous ways, including but not limited to the following: failing to timely provide and to manage (including update) deficiency lists issued by USACE; failing to properly perform Quality Control, resulting in unnecessary inspections and re-inspections by USACE; failing to properly perform Project Scheduling, including properly maintaining and updating the project schedule; failing to provide an updated activity hazard analysis; failing to submit its geotechnical subsurface report for Phase 1A, which was a precondition to starting that work and impacted work across the project footprint; failing to properly address and resolve conflicts and issues with USACE; and failing to pass-through and/or sufficiently pursue changes and claims with USACE.

14. On July 14, 2021, OCS issued a "Notice Pursuant to Section 3 of Performance Bond" to Myers and Myers' sureties. In the letter, OCS stated in part that it was considering terminating the Subcontract for default.

15. On July 15, 2021, OCS transmitted to Myers a "Cure Notice" dated July 15, 2021 that had been issued by USACE to OCS, and demanded that Myers submit a response.

16. On July 19, 2021, Myers submitted a "Recovery Plan" to OCS. In its submission, Myers disputed that it was in breach of any of its obligations. Nevertheless, in its continued effort to support OCS and the Project, Myers described various additional measures that would be implemented to ensure the timely completion of the Project. Also, Myers asked OCS to commit to certain items, including the scheduling of a meeting with USACE within the next two days for OCS and Myers to obtain any feedback necessary for developing a successful recovery

plan, as well as executive level meetings of OCS, Myers, and USACE to be held every two weeks to review progress and make decisions on open issues.

17. On July 23, 2021, Myers submitted a response to the allegations in OCS's letters dated July 14, 2021 and July 15, 2021 and a response and status update on USACE's July 15, 2021 Deficiency Items log. In the letter, Myers explained that a large number of the items listed in the USACE log had already been addressed and that the remaining items were (a) incomplete work incorrectly identified as deficiencies, (b) incomplete work where clarification and collaboration was needed on the scope of the deficiencies and desired remedial action, or (c) incomplete work in progress or to be corrected. Myers attached a spreadsheet providing a status update for each item listed in the USACE log. Also in the letter, Myers reiterated the request made in its July 19 letter for biweekly executive level meetings of OCS, Myers, and USACE.

18. On July 26, 2021, OCS sent a letter to Myers acknowledging Myers' commitment to the Project and stating in part that "OCS is not proceeding with a termination for default of the Myers subcontract at this time."

19. On July 26, 2021, Myers responded to OCS's letter of that same date. Myers reminded OCS of its letters dated July 19, 2021 and July 23, 2021, as well as its surety's letter dated July 16, 2021 confirming a willingness to meet with OCS.

20. On July 29, 2021, USACE issued a "Safety Stand Down South Lawton," identifying four alleged safety violations.

21. On July 30, 2021, Myers sent a letter to OCS addressing each of the four alleged safety violations identified in the USACE Safety Stand Down notice. In the letter, Myers explained that none of the alleged violations presented any imminent danger or warranted the direction to stop work, and in fact, a number of the allegations were simply not factually

accurate. Further, Myers stated that the stoppage of the work was an unnecessary project delay and requested an immediate reversal of the stoppage to permit Myers to execute its recovery plan. Notably, OCS agreed with Myers' position that the standdown was improper. Also in the letter, Myers again requested executive level meetings between USACE, OCS, and Myers, and again expressed its full commitment to the timely, safe, and successful completion of the Project.

22. Also on July 30, 2021, and in response to conflicting directions from OCS received at the field level, Myers issued a letter to OCS requesting clarification on the path forward. In the letter, Myers noted that it had developed a recovery plan and had mobilized its additional resources to progress the work in accordance therewith. Further, Myers expressed concern that its efforts to implement its plan had been met with resistance in certain ways, and also raised issues regarding OCS direction to work in a linear path, as opposed to advancing work in multiple locations concurrently, and to prioritize Jackson Circle, as opposed to the three other areas identified by USACE as the most critical areas to be completed first. Again, Myers requested executive level meetings between USACE, OCS, and Myers in order to communicate and effectively progress the work.

23. On August 2, 2021, OCS verbally informed Myers during a telephone conversation that USACE had rejected OCS's recovery plan. By letter dated August 4, 2021 (misdated November 22, 2008), Myers referenced that conversation as well as OCS's refusal to share with Myers USACE's rejection of OCS's recovery plan. Myers noted that it needed OCS to timely share information in order to fully support OCS on the Project. Notwithstanding OCS's refusal to do so, Myers affirmed that it would "remain at the ready" to progress the work to achieve the project milestones. In closing, Myers again requested a copy of the USACE rejection notice and again requested senior level meetings between USACE, OCS, and Myers.

24. On August 4, 2021, OCS sent a letter in response to Myers' letter of that same date.

25. On August 5, 2021, Myers issued a letter to OCS in response to OCS's August 4th letter. Myers noted that it had asked repeatedly for USACE's rejection of OCS's recovery plan and for meetings to support the Project, but that OCS had refused those requests. Myers also noted that "we are currently shutdown because, as you explained to us on 8/3 (sic), the Corps will not permit work to resume until you have an approved recovery plan … [and] we are unable to take any corrective action that may be needed because Ocean will not even share why the Corps rejected Ocean's recovery plan in the first instance." Further, Myers stated: "We reiterate again that we are ready and have available resources necessary to support Ocean and this project, and timely achieve the dates requested by the Corps. However, we require basic information, cooperation and the requested meetings in order to support both. Please reconsider your August 5th (sic) position." Myers also listed the additional resources they had mobilized to the Project to address USACE's concerns as described in the July 15th Cure Notice; specifically:

- Brought on additional Superintendent, Jeremy Chapman, to assist in the oversight and directing of field operations
- Contracted and scheduled two new underdrain subcontractors
- Contracted and scheduled a new WiFi subcontractor
- Contracted and mobilized a new survey subcontractor
- Mobilized an additional pipe crew, additional grading crew, and additional miscellaneous support crew
- Added a Project Engineer, Noah Sirbaugh, to assist in quality control and support increased resources

In closing, Myers stated: "We firmly believe that with proper cooperation between Allan Myers, Ocean and the Corps we can timely complete this project. We remain available any time to meet with you and the Corps to discuss how we achieve this goal."

26. On August 9, 2021, at 4:56 p.m. by facsimile transmission, OCS issued a letter to Myers referencing "Subcontract Article 10" and demanding a "cure" within three days. Unbeknownst to Myers, before issuing the three-day cure notice to Myers, OCS had engaged in communications with another contractor about completing the remaining scope of work under the Myers Subcontract.

27. In the August 9th letter, OCS listed a number of USACE letters "directly linked to concerns over Myers work[.]" The only listed letter that post-dated the USACE July 15th Cure Notice was the July 29th Safety Stand Down letter, which Myers had addressed by letter dated July 30, 2021. OCS failed to mention Myers' July 30th letter in its letter, as well as that OCS actually agreed with Myers' position regarding the safety standdown. Also in its letter, OCS described correspondence exchanged by OCS and Myers during the previous three weeks, but ignored Myers' letters dated July 23, 2021 and July 26, 2021. Additionally, OCS "pasted" into the letter a list of all items that had been identified at any time during the Project on the USACE Deficiency Items log, regardless of merit or whether the items had been addressed previously, and with no mention of Myers' July 23rd letter addressing all of the items that remained on the July 15th version of the log. None of the items on the OCS list post-dated the USACE July 15th Notice to Cure. OCS closed its letter by stating as follows: "Unless Myers can cure its failures and inability to perform the Subcontract and Prime Contract as incorporated, OCS may terminate the Subcontract for default."

28. On August 11, 2021, Myers responded to OCS's August 9th Notice to Cure. Myers stated that OCS had prevented Myers from progressing the work at the site and had failed to share basic information from USACE, making it impossible to "cure" any issues for which Myers may be responsible. Myers also stated that OCS's position that Myers was in material breach of the Subcontract was lacking in merit. In the letter, Myers identified certain correspondence that OCS had ignored in its Notice to Cure, including Myers' July 23rd letter addressing the claimed "deficiencies." Myers also noted that a number of the items in the letter had been satisfactorily addressed months ago, as well as the fact that USACE had identified certain performance failures by OCS, including inadequacies in OCS's quality control and schedule maintenance, which were "key reasons" for the USACE July 15th Notice to Cure. Further, Myers noted that they had been unable to address any legitimate issues "due to persistent – and acknowledged – interference with our recovery plan." Myers described examples of interference, including the wrongful cancellation of preparatory meetings, unjustified work stoppages, and the failure to convene senior level meetings despite Myers' repeated requests for them. Also, Myers described how OCS had "proceeded to exacerbate the conditions" by refusing to share USACE's rejection of OCS's recovery plan and by refusing to set up the senior level meetings that Myers had repeatedly requested. Myers also noted that there were many instances during the Project where OCS deficiencies resulted in USACE improperly flagging items as deficient or otherwise stopping work. Myers maintained that they remained dedicated to the Project and were "ready, willing and able to implement our plan to timely achieve the Corps' key dates, including via the measures outlined in our July 19th and August 5th letters[.]" Finally, Myers requested an immediate meeting of the principals of Myers and OCS to

discuss the status of the Project and how the parties could work in partnership to ensure its timely completion.

29. On the morning of August 12, 2021, in response to the three-day cure notice, Myers attempted to perform work on the project site, but OCS prevented Myers from doing so. By email from OCS, Myers was informed as follows:

> Allan Myers cannot work today. The project is under a work suspension directed by USACE. The suspension was issued with Letter rejecting our Corrective Action Plan submitted on July 26, 2021. This suspension will remain in effect until the government accepts our revised Corrective Action Plan submitted on August 9, 2021. I repeat Allan Myers cannot work today. If Allan Myers chooses to violate the government mandated work suspension there will be serious consequences.

30. By letter dated August 12, 2021, Myers described OCS's actions that morning in prohibiting Myers from working. Also in the letter, Myers explained that OCS had issued the three-day cure notice but then prevented Myers from curing any alleged issues. Myers also pointed out that OCS had continued to fail to share basic information with Myers, including USACE's rejection of OCS's initial recovery plan submitted on July 26, 2021, and OCS's revised recovery plan submitted on August 9, 2021. Myers again assured OCS that Myers remained ready, willing and able to progress the work and to achieve timely completion of the Project, and again requested an immediate meeting of the principals of OCS and Myers.

31. OCS responded to Myers by letter dated August 12, 2021; and Myers replied by another letter dated August 12, 2021. In its letter, Myers again requested a senior level meeting between Myers and OCS.

32. On August 16, 2021, OCS issued a letter to Myers terminating the Subcontract for default.

33. After receipt of the default termination notice, Myers went to the project site to retrieve its equipment, but OCS refused to permit Myers to retrieve its trench boxes and associated equipment from the site.

**COUNT I – CLAIM ON PAYMENT BOND**
**(against both Defendants)**

34. The allegations in the foregoing Paragraphs are incorporated herein by reference as if fully stated herein.

35. As required by the federal Miller Act, 40 U.S.C. §§ 3131 *et seq.*, OCS and Westfield issued a Payment Bond guaranteeing payment to subcontractors like Myers that furnished labor or material for the Project.

36. Myers performed all the terms and conditions required of it under the Subcontract and the Payment Bond and/or is otherwise excused from performance because of OCS's breach of its obligations to Myers.

37. For base contract work and approved Change Orders performed through June 30, 2021, Myers submitted payment applications through Application No. 11 for compensation in the total amount of $4,066,256.63, but has been paid only $3,082,027.07, leaving an unpaid balance of $984,229.56.

38. For base contract work and approved Change Orders performed by Myers but not billed through Application No. 11, Myers is due and owed compensation in the amount of $324,645.10.

39. For additional work that is not the subject of approved Change Orders, Myers remains due and owed compensation in the amount of $1,520,432.00.

40. For materials stored onsite, Myers is due and owed compensation in the amount of $101,564.82.

41. In sum, for base contract work, Change Order work, additional work not included in Change Orders, and materials stored onsite, Myers is due and owed compensation in the amount of $2,930,871.48.

42. In addition, changes and conditions beyond Myers' control and for which Myers is not responsible caused Myers to perform its work less efficiently than reasonably anticipated, thereby suffering a significant loss of productivity, and Myers has not been compensated for its productivity losses.

43. Myers furnished labor or material in carrying out work provided in a contract for which a payment bond was furnished under 40 U.S.C. § 3131. This action has been filed within one year of the last day Myers provided labor or materials to the Project. Consequently, pursuant to 40 U.S.C. § 3133(b)(1), Myers may bring an action on the payment bond for the amount unpaid.

WHEREFORE, Myers demands judgment in its favor and against OCS and Westfield, jointly and severally, in the amount of $2,930,871.48, plus the value of the rented and owned equipment OCS wrongfully prevented Myers from removing from the project, reasonable demobilization costs, and loss of productivity costs, plus interest, and for such further and different relief as the Court deems just and proper.

**<u>COUNT II – WRONGFUL DEFAULT TERMINATION</u>**
**(against Defendant Ocean Construction Services, Inc.)**

44. The allegations in the foregoing Paragraphs are incorporated herein by reference as if fully stated herein.

45. OCS's termination of the Subcontract for default was improper and unreasonable, and a breach of the implied duty of good faith and fair dealing, for various reasons, including but not limited to the following:

a. Myers was not in default under the Subcontract;

b. OCS blamed Myers for performance issues on the Project even though OCS itself was responsible for certain USACE complaints, including those related to schedule deficiencies and quality control ("QC") issues;

c. OCS failed to acknowledge Myers' prompt and reasonable efforts to address issues raised by OCS and/or USACE, including Myers' recovery plan submitted on July 19, 2021, and Myers' response to the USACE "Deficiency Items" log on July 23, 2021;

d. OCS ignored Myers' mobilization of additional resources designed to achieve timely completion of the Project, including additional supervisory personnel (including a superintendent and a project engineer), additional work crews (including pipe crew, grading crew, and miscellaneous support crew), and additional subcontractors (including two new underdrain subcontractors, a new WiFi subcontractor, and a new survey subcontractor);

e. OCS failed to share with Myers critical information, including USACE's rejection, on July 30, 2021, of OCS's initial recovery plan, and OCS's revised recovery plan submitted on August 9, 2021;

f. OCS ignored Myers' repeated requests for meetings with OCS and for meetings with OCS and USACE, and failed and/or refused to set up a single meeting before terminating the Subcontract for default;

g. when it issued the three-day "cure" notice on August 9, 2021, OCS never intended to provide Myers an opportunity to cure the alleged default;

      h. after issuing a three-day "cure" notice, OCS prevented Myers from accessing the project site, thereby denying Myers any opportunity to cure the alleged default; and

i. after preventing Myers from attempting to cure the alleged default, OCS terminated the Subcontract for default.

46. The Subcontract provides the following remedy for a wrongful default termination:

> Termination for Default under Article 10.1, if wrongfully made, shall be treated as a Termination for Convenience. For a Termination for Convenience, Subcontractor shall be paid only its actual costs for labor and materials in place, plus reasonable windup costs, plus fifteen percent (15%) for overhead and profit. Subcontractor shall not be entitled to anticipated profits on unperformed portions of its Subcontract work, overhead, unearned profit or damages of any kind.

(Subcontract, Article 10.2).

WHEREFORE, Myers demands judgment in its favor and against OCS arising out of the wrongful default termination, including a judicial determination that the default termination was wrongful and that the default termination be converted to a termination for convenience; an award of damages in the amount of $2,930,871.48, plus the value of the rented and owned equipment OCS wrongfully prevented Myers from removing from the project, reasonable demobilization costs, loss of productivity costs, and lost profit, plus interest; and for such further and different relief as the Court deems just and proper.

**COUNT III – BREACH OF CONTRACT**
**(against Defendant Ocean Construction Services, Inc.)**

47. The allegations in the foregoing Paragraphs are incorporated herein by reference as if fully stated herein.

48. Myers performed work on the Project for which it has not been paid in full, including base contract work, approved Change Order work, and additional work that is not the subject of approved Change Orders.

49. For base contract work and approved Change Orders performed through June 30, 2021, Myers submitted payment applications through Application No. 11 for compensation in the total amount of $4,066,256.63, but has been paid only $3,082,027.07, leaving an unpaid balance of $984,229.56.

50. For base contract work and approved Change Orders performed by Myers but not billed through Application No. 11, Myers is due and owed compensation in the amount of $324,645.10.

51. For additional work that is not the subject of approved Change Orders, Myers remains due and owed compensation in the amount of $1,520,432.00.

52. For materials stored onsite, Myers is due and owed compensation in the amount of $101,564.82.

53. In sum, for base contract work, Change Order work, additional work not included in Change Orders, and materials stored onsite, Myers is due and owed compensation in the amount of $2,930,871.48.

54. In addition, changes and conditions beyond Myers' control and for which Myers is not responsible caused Myers to perform its work less efficiently than reasonably anticipated, thereby suffering a significant loss of productivity, and Myers has not been compensated for its productivity losses.

55. OCS's failure to pay Myers all amounts due Myers for work performed on the Project is a material breach of the Subcontract.

56. OCS, through its failure to properly manage the Project and to properly administer the Subcontract, breached its implied duty of good faith and fair dealing, breached its implied duty not to hinder or delay performance, and materially breached the Subcontract.

57. OCS, by wrongfully and improperly terminating the Subcontract for default, breached its implied duty of good faith and fair dealing and materially breached the Subcontract.

WHEREFORE, Myers demands judgment in its favor and against OCS in the amount of $2,930,871.48, plus the value of the rented and owned equipment OCS wrongfully prevented Myers from removing from the project, reasonable demobilization costs, loss of productivity costs, and lost profit, plus interest, and for such further and different relief as the Court deems just and proper.

**COUNT IV – CONVERSION**
**(against Defendant Ocean Construction Services, Inc.)**

58. The allegations in the foregoing Paragraphs are incorporated herein by reference as if fully stated herein.

59. OCS refused to permit Myers from retrieving certain valuable equipment from the project site, including nine trench boxes and associated equipment, whose value exceeds $230,000.00.

60. OCS's retention of Myers' equipment constitutes an unlawful exercise of ownership, dominion and control over such equipment in denial or repudiation of Myers' right to such equipment.

WHEREFORE, Myers demands judgment in its favor and against OCS in an amount in excess of $230,000.00, plus punitive damages, plus interest, and for such further and different relief as the Court deems just and proper.

September 23, 2021

Respectfully submitted,

Douglas L. Patin (VA Bar No. 20324)
Amy E. Garber (VA Bar No. 83908)
Bradley Arant Boult Cummings LLP
1615 L Street, NW, Suite 1350
Washington, DC 20036
Phone: (202) 719-8241
Fax: (202) 719-8341
Email: dpatin@bradley.com
Email: agarber@bradley.com

*Attorneys for Plaintiffs United States for the use and benefit of Allan Myers VA, Inc., and Allan Myers VA, Inc.*